UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

| | |
|---|---|
| OSBOURNE RENFROW, | 2:12-cv-00632-MMD-VCF |
| Plaintiff, | **ORDER** |
| vs. | |
| REDWOOD FIRE AND CASUALTY | (*Emergency* Motion to Compel (#30) and |
| INSURANCE COMPANY, *et al.,* | Motion to Bifurcate (#33)) |
| Defendants. | |

Before the court is plaintiff Osbourne Renfrow's *Emergency* Motion to Compel. (#30). Defendants filed an Opposition (#32), and plaintiff filed a Reply (#40).

Also before the court is defendants' Motion to Bifurcate, or In the Alternative Stay Discovery of the Extra-Contractual Cause of Action. (#33). Plaintiff filed an Opposition (#43), and defendants filed a Reply (#44). The court held a hearing on January 30, 2013. (#45).

**Background**

Plaintiff filed his complaint in the Eighth Judicial District Court, Clark County Nevada, on March 5, 2012, alleging claims against defendants Redwood Fire and Casualty Insurance Company and Berkshire Hathaway Homestate Companies arising from an automobile accident wherein plaintiff suffered injuries causing him "loss of earning capacity, loss wages, physical impairment, mental anguish, and loss of enjoyment of life..." (#1). Plaintiff alleges that the negligent third-party's insurance carrier paid the insurance policy limits and that after realizing that the insurance policy limit was insufficient, plaintiff demanded underinsured policy limits from the defendants. *Id.* Plaintiff states

that defendants failed to make fair payment as required under the policy and that this refusal was unreasonable and made in bad faith. *Id.*

On April 17, 2012, defendants removed the action to this court based on diversity of citizenship under 28 U.S.C. § 1332. (#1). Defendants filed their answer on May 4, 2012 (#6), and the court entered the parties' discovery plan and scheduling order (#9) on June 14, 2012 (#11). On June 22, 2012, the parties filed a stipulation and order to amend the complaint (#13) to name defendant Berkshire Hathaway Homestate Company in place of defendant Berkshire Hathaway Homestate Companies. The court signed the stipulation (#14) and the amended complaint was filed (#15). On August 13, 2012, the parties filed a stipulation to extend discovery deadlines (#20), and on August 14, 2012, the court signed the same (#22).

On October 24, 2012, the parties filed another stipulation to extend discovery deadlines (#26), which the court signed on October 25, 2012 (#28). The discovery plan set a discovery cut-off date of February 28, 2013, expert deadline of December 31, 2012, rebuttal expert deadline of January 30, 2013, dispositive motions deadline of April 1, 2013, and a JPTO deadline of May 1, 2013. (#28). Plaintiff filed the instant *Emergency* motion to compel production of claims file and other documents, request for additional time, and request for sanctions on December 21, 2012. (#30). Defendants filed an opposition (#32) and a motion to bifurcate, or in the alternative stay discovery of the extra-contractual claims (#33) on December 27, 2012. A notice of change of attorney on behalf of the defendants was filed on January 2, 2013. (#37). The court entered a minute order on January 3, 2013, setting a hearing on the motion to compel (#30). Plaintiff filed his opposition to the motion to bifurcate on January 13, 2013 (#43), and defendants filed their reply on January 23, 2013 (#44).

. . .

. . .

. . .

A.   Motion To Compel

1.   Relevant Facts

Plaintiff alleges that he requested the claims file and other related information via requests for production of documents and that defendants not only failed to respond within the 30 day time frame, defendants "ultimately refused to disclose the claims file to [p]laintiff after leading [p]laintiff's counsel to believe the file would be produced." (#30). The time-line of events is as follows:

**September 19, 2012,** plaintiff's first set of requests for production of documents was served on defendants;

**October 22, 2012**, responses were due and defendant failed to respond;

**October 25, 2012**, plaintiff contacted defendants' original counsel who informed plaintiff that new associated counsel would be responding, and plaintiff attempted to contact new counsel and was eventually able to speak to counsel who requested additional time;

**November 5, 2012**, defendants had not responded and plaintiff contacted counsel to no avail;

**November 7, 2012**, plaintiff contacted counsel again to no avail;

**November 9, 2012**, plaintiff emailed counsel and provided a November 13, 2012, deadline to receive the responses, and received a phone call back stating that another lawyer would be handling the responses and that the deadline would be fine;

**November 13, 2012**, counsel contacted plaintiff to request another extension, and stated that "*Pam McGaha and I were in over the weekend working on our client's responses to requests for production of documents in an effort to provide the responses by [sic] your identified deadline of today. They are almost complete, but I still need the carrier's approval before I send anything out, as this is the first time I have ever worked for this company. I would consider it a personal favor if I can have an extra day or two to get the necessary approval and then send our responses*." Plaintiff represented that the deadline to receive the responses was November 15, 2012;

**November 15, 2012;** Plaintiff received defendants' responses (#30 Exhibit 2). *Id.*

The requests that are the subject of the instant motion to compel (#30) are as follows:

REQUEST FOR PRODUCTION NO.1: CLAIM FILES: Please produce all documents, writings, and communications that were produced as a result of: or are related to, Osbourne Renfrow's claim of March 5, 2010, and his claim for coverage. These documents should include, but not be limited to, the entire claim file, investigation file, printouts from all computer communications and electronic databases and logs, all electronically imaged documents and all reports and investigations.

REQUEST FOR PRODUCTION NO.2: UNDERWRITING FILES: Please produce all documents, writings, and communications that were produced as a result of, or related to, any of Osbourne Renfrow's applications for insurance with Defendants. These documents should include, but not be limited to, the entire underwriting file, printouts from all computer communications and electronic databases and logs, all electronically imaged documents and all replies and investigations.

REQUEST FOR PRODUCTION NO.3: CLAIM MANUALS: Please produce all documents, writings, and communications that are used by claims personnel for reference, training, and guidelines for the adjusting of Defendants' claims. These items should include, but not be limited to, all claims manuals, all information and guidelines for the adjudication of claims and all other resources used by Defendants' insurance personnel for the adjudication of claims.

REQUEST FOR PRODUCTION NO.4: CLAIM ANALYSIS: Please produce all documents, writings, and communications, and any drafts or revisions thereof, which contain explanations of the basis in the insurance policy, with respect to the facts of the Plaintiff's claim and the applicable law, for the denial of the Plaintiff's claim.

REQUEST FOR PRODUCTION NO.5: FINANCIAL STATEMENTS: Please produce all documents, writings, communications, financial statements, both audited and unaudited, and

amendments thereto, which show your net worth for the last five (5) years according to GENERAL ACCEPTED ACCOUNTING PRINCIPLES (GAAP).

REQUEST FOR PRODUCTION NO.6: FINANCIAL STATEMENTS: Please produce all documents, writings, communications, financial statements, both audited and unaudited, and amendments thereto, w:hich state your net income or loss for the last five (5) years according to GENERAL ACCEPTED ACCOUNTING PRINCIPLES (GAAP).

REQUEST FOR PRODUCTION NO.8: Please produce any and all written, recorded, or signed statements in your possession, custody or control made by any person concerning or relating to the subject Incident including, but not limited to, statements from the parties, witnesses, investigators or agents of the parties.

Plaintiff contacted defense counsel on November 20, 2012, to address the deficient responses, and left a voice mail message. (#30). On December 10, 2012, defense counsel returned the call and stated that the claims file would not be provided and that the privilege log regarding the claims file would be produced. *Id.* On December 11, 2012, plaintiff mailed and faxed a letter to plaintiff seeking the claims file and other information. *Id* (Exhibit 6). Plaintiff stated that a motion to compel would be filed if the information was not produced by December 13, 2012. *Id.* On December 12, 2012, defense counsel emailed plaintiff stating that "he would review with [his] client and be in touch.." *Id.* As of December 21, 2012, plaintiff had not heard from defense counsel and had not received the claims file or other information. *Id.*

### 2. Plaintiff's Arguments

Plaintiff argues that he should be provided with the claims file, as this is a bad faith case and the claims file is relevant and discoverable. (#30). Plaintiff argues that "[i]n fact, this Court has stated that "the claim file in an insurance bad faith action contains critical evidence regarding the investigation, analysis, and ultimate decision regarding an insured's claim." *Id.* Plaintiff asserts that the argument that

the claims file is work product is invalid, as "[t]he Ninth Circuit has found that "opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling..." *Id* (citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)). Plaintiff also states that "[i]n a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue," and that "[t]his Court has also held that "[d]iscovery of opinion work product is permitted in insurance 'bad faith' claims because the mental impressions of the insurer's representatives in handling the claim and making coverage decisions are directly at issue and the insured's need for the material is compelling..." *Id* (citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (quoting *Reavis v. Metro. Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 163 (S.D. Cal. 1987); *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, 2:05CVOI318BES-GWF, 2006 WL 3149362 (D. Nev. Nov. 1,2006) (citing *Holmgren v. State Farm Mutual Auto. Ins. Co* , 976 F.2d 573, 577 (9th Cir.1992).

Plaintiff asserts that this court specifically found that the entire claims file cannot be withheld on the basis of work-product doctrine, "because not all of the materials contained within the claims file is allowable work-product prepared in anticipation of litigation." *Id* (citing *Schmidt v. California State Auto. Ass'n,* 127 F.R.D. 182,184 (D. Nev. 1989). Plaintiff states that the "the routine claims processing material prepared in the ordinary course of the insurance business will not be immunized from discovery." *Id* (citing *Schmidt*, 127 F.R.D. at 184). Plaintiff states that the court can easily ascertain which items are work-product by conducting an *in camera* review of the claims file. *Id.*

Plaintiff also asserts that the claims file cannot be withheld based on attorney–client privilege, as this court held in *Schmidt* that:

> "[t]he entire claims file is not shielded by the attorney-client privilege because not all of the material within the claims file embodies confidential communications between the defendant and an attorney acting in the role of attorney. Typically, most of what is in the claims file is simply the

> ordinary work-product of the defendant's employees, and not privileged communications between client and attorney, although some such material may also be in the claims file."

Plaintiff states that while some documentation has been provided to plaintiff, the documents contain negligible information that provides no insight as to the strategy and mental impressions of the agents handling the claim. *Id.* Plaintiff asks this court to order defendants to disclose the full extent of its claims file other than matters that are strictly attorney-client privileged. *Id.* Plaintiff also argues that the late and improper responses should be stricken for failure to comply with Rule 26(b)(5)(A). *Id.*

Rule 26(b)(5)(A) requires a party withholding information due to a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Plaintiff states that any privilege objection is waived, as "(1) Defendant's responses provide no information by which Plaintiff or the Court can legitimately evaluate whether the withheld documents are actually privileged; (2) Defendant's objections were made long after the October 22, 2012 deadline; (3) the claims file is pivotal for Plaintiff's case and, in fact, is the most crucial documentation necessary for Plaintiffs bad faith expert to render opinions; and (4) it should not be difficult for Defendant to produce its claims file on this one particular matter." (#30)(using the Ninth Circuit's analysis[1] in *Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 647-48 (D. Nev. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005)).

---

[1] "[U]sing the 30-day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: [1] the degree to which the objection or assertion of the privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); [2] the timeliness of the objection and the accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); [3] the magnitude of the document production; and [4] other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard."

The privilege log was also never provided, plaintiff argues, and "because Defendant's "discovery violations 'threaten to interfere with the rightful decision of the case[2]'" and were "due to willfulness, fault or bad faith by[3]"... Defendant, Defendant's Answer should also be stricken." *Id.* Plaintiff also asks this court to award attorney's fees and costs due to defendants' failure to produce the claims file, which is a willful violation of the discovery rules. *Id.* Since the claims file has not been produced, plaintiff argues that he has been prejudiced, as he has been unable to disclose his expert by the deadline because the expert does not have a claims file to review. *Id.*

### 3. Defendants' Arguments

Defendants filed their opposition (#32) and a motion to bifurcate the trial (#33) as one document, and the court clerk filed it as two separate documents. Defendants position is that, "at the very least, there are genuine disputes regarding the amount of the Plaintiff's damages and the reasonableness of his treatment and, as such, this action is simply a breach of contract dispute. The causes of action related to the UIM/contract dispute must be decided before it gives rise to any claims for extra-contractual remedies. Accordingly, the extra-contractual causes of action should be bifurcated from the present breach of contract action and discovery related to the extra-contractual causes of action should be stayed." (#32).

Defendants oppose the request for production of the claims file and argue that "discovery related to the extra-contractual allegations should not be had because it is prejudicial and does not serve judicial economy where the underlying dispute regarding the value of UIM benefits has yet to be resolved." *Id.* Defendants state that they only provided responses consistent with this position and that they did so in a time-frame approved by plaintiff, after securing an extension. *Id.* Defendants assert that defense counsel left a voice mail explaining that the privilege log was completed and requesting a phone call to

---

[2] *Garden City Boxing Club, Inc. v. Izarraraz,* 207-CV-01563RLH-GWF, 2008 WL 5351681 (D. Nev. Dec. 18, 2008) (quoting *Valley Engineers Inc. v. Electric Engineering Company*, 158 F.3d 1051, 1057-58 (9th Cir.1998).
[3] *Garden City Boxing Club, Inc. v.lzarraraz,* 207-CV-01563RLH-GWF, 2008 WL 5351681 (D. Nev. Dec. 18, 2008) (citing *Henry v. Gill Industries*, 983 F.2d 943, 947-48 (9th Cir.1993).

discuss "outstanding discovery issues, including Plaintiff's request for claims file documentation and the expert disclosure deadline," but that counsel "did not receive a return phone call from Mr. Naqvi to discuss the issues raised in his Motion to Compel, instead, Mr. Naqvi simply filed the Motion to Compel without the benefit of counsel for Redwood being afforded an opportunity to discuss its privilege log and any discovery dispute related to documents Plaintiff requested." *Id.*

### a. Request No. 1

Defendants state that the request for the entire claims file is "premature pending resolution of the UIM/contract claim. Further, much of the information sought by way of Plaintiff's Request for Production of Documents, is simply not relevant even to the breach of contract claim. The UIM/contract claim involves a dispute as to the value of Plaintiff's injury claim and wage loss claim. Redwood has never denied Plaintiff's UIM/contract claim. Accordingly, any information contained within claims notes or other claims file documentation reflecting Redwood's evaluation of Plaintiff's claim is not relevant to the breach of contract claim, and would only be potentially relevant to extra-contractual claims, which, as discussed, are premature." *Id.*

### b. Request No. 2

Defendants state that "[t]here is no claim at issue which would make the underwriting file relevant. Redwood has not disputed UIM coverage for this claim, and has paid the medical payment benefits to Plaintiff. Redwood asserted appropriate objections to Plaintiff's request for the underwriting file given there are no coverage, limits of coverage, premium, or other underwriting issues involved in this lawsuit." *Id.*

### c. Request No. 3

Defendants assert that they do not have documents responsive to this request. *Id.*

      d.      **Request No 4**

It is the defendants' position that they "asserted proper objections to this request. Plaintiff's request of Redwood to provide documents which reflect a legal analysis for "the denial of the Plaintiff's claim" is improper, as Redwood has never denied Plaintiff's claim." *Id.*

      e.      **Request No 5**

Defendants state with regard to request for information related to Redwood's net worth for the last five years that "[t]his information is not relevant to the breach of contract claim, and is entirely premature with respect to the extra-contractual claims. There has been no resolution of the UIM/contract claim and there has been no finding of bad faith on the part of Redwood which would make the requested net worth of Redwood even potentially relevant to Plaintiff's claims." *Id.*

      f.      **Request No 6**

Defendants state that the request for information related to Redwood's financial statements for the last five years "is not relevant to the breach of contract claim, and is entirely premature with respect to the extra-contractual claims." *Id.*

      g.      **Request No. 8**

Defendants argue with regard to the request for statements from parties, witnesses, investigators or agents of the parties that they "produced documentation related to its investigation which it believes was responsive to Plaintiff's request for the claims file, while asserting proper objections. Redwood referred the Plaintiff to those documents produced in response to Plaintiff's request for the claims file, which would contain information requested regarding the statements referred to in Plaintiff's Request for Production No. 8." *Id.*

Defendants assert that the plaintiff's motion is misleading as it relates to the communications between the parties. *Id.* Since defense counsel changed, the parties agreed to additional time to respond to the requests. *Id.* Defendants take no opposition to extending the cut-off date for expert disclosures.

*Id.* Defendants ask this court to deny the requests for sanctions, as (1) defendants "asserted proper objections to Plaintiff's request for documents and produced documents it determined to be responsive to Plaintiff's request," (2) "counsel called attorney Naqvi the day before his Motion to Compel was filed, and left a message advising him the Privilege Log was completed and requesting a return phone call to discuss the Privilege Log, the expert deadline and related discovery issues," (3) "[a]rguably, attorney Naqvi did not comply with the requirements to meet and confer prior to filing the instant motion," (4) as "[t]his is the first time any discovery dispute has been brought before this court," "[a] sanction consisting of striking Redwood's Answer and discovery responses, would be wholly inappropriate and devastating to Redwood...," and (5) that "[t]his Court should deny Redwood's request for attorney's fees and costs in bringing this Motion to Compel, since the undersigned attempted to contact attorney Naqvi to discuss the very issues present in this motion." *Id.*

### 4. Relevant Law/Discussion

#### a. Extension of Deadlines

As an initial matter, since defendants have not provided plaintiff with the claims file needed for the expert witness to opine regarding the bad faith claim, and the court is not bifurcating the claims and is ordering production of the claims file as addressed below, the court finds that extending the expert disclosure deadline until March 15, 2013, is appropriate. The parties must meet and confer to agree upon and submit a stipulation to the court regarding the deadline for the rebuttal expert disclosure deadline.

#### b. Discovery Requests

Federal Rule of Civil Procedure 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b) that are "relevant to any party's claim or defense..." or, for good cause shown, "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b). Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes.

*See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id*. In responding to Rule 34 requests, "the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Pursuant to Rule 37(a)(3)(B)(iv), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

Defendants base most of their objections to the discovery requests on the position, brought up for the first time in their opposition (#32) and motion to bifurcate (#33), that since the claims should be bifurcated, certain requests are premature. (#32). The court has not ruled on the motion to bifurcate (#33), stayed discovery of the extra-contractual claims, or bifurcated discovery of the claims. Defendants cannot object to discovery based on a motion they *intended* to file, without filing a motion for protective order asking the court to forbid or limit the discovery on the bad faith claim due to an alleged undue burden, expense, or prematurity. *See* Fed. R. Civ. P. 26©[4].

The court will address the requests below:

REQUEST FOR PRODUCTION NO.1: CLAIM FILES. The court finds that the claims file is relevant to plaintiff's claim for bad faith. *Oppenheimer Fund*, 437 U.S. at 351. Defendants must produce <u>all</u> responsive, non-privileged, documents to Request No. 1 by February 13, 2013.

REQUEST FOR PRODUCTION NO.2: UNDERWRITING FILES. The court finds that the plaintiff is entitled to the requested documents, as they are relevant to his claims of breach of contract

---

[4] Under Rule 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following...(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters..."

and bad faith.  *Oppenheimer Fund*, 437 U.S. at 351.  Defendants must produce all responsive, non-privileged, documents to Request No. 2 by February 13, 2013.

REQUEST FOR PRODUCTION NO.3: CLAIM MANUALS.  The court finds that training and other materials that were in effect in March of 2010, through the present are relevant to plaintiff's claims for breach of contract and bad faith.  *Oppenheimer Fund*, 437 U.S. at 351.  Defendants must produce all responsive documents to Request No. 3 by February 13, 2013.  If such documents do not exist, defendants must certify the same.

REQUEST FOR PRODUCTION NO.4: CLAIM ANALYSIS.  The court finds that documents, writings, and communications, and any drafts or revisions thereof, which contain explanations of the basis in the insurance policy, with respect to the facts of the Plaintiff's claim and the applicable law, for the denial of the plaintiff's claim are relevant to plaintiff's claim that defendants have continued to delay and dispute the plaintiff's claim.  *Oppenheimer Fund*, 437 U.S. at 351.  The parties must meet and confer prior to the February 13, 2013, deadline to discuss the responsive information defendants designated as privileged in defendants' priviledged log.  If, after the meet and confer, disputes remain regarding alleged privileged information that is responsive to this request, plaintiff may file a motion with the court.  Defendants must produce all responsive, non-privileged, documents to Request No. 4. by February 13, 2013.

REQUEST FOR PRODUCTION NO.5: FINANCIAL STATEMENTS and REQUEST FOR PRODUCTION NO.6: FINANCIAL STATEMENTS.  The court finds that responsive documents to Request Nos. 5 & 6 are relevant *only* if there is a finding at trial that punitive damages are appropriate.  *Oppenheimer Fund*, 437 U.S. at 351.  Defendants must file responsive documents to Request Nos. 5 & 6 for 2012 and 2013 (if applicable) under SEAL in conjunction with the filing of the Joint Pretrial Order.

REQUEST FOR PRODUCTION NO.8.  The court finds that statements from the parties, witnesses, investigators or agents of the parties relating to the plaintiff's accident are relevant to

plaintiff's claims and are discoverable. *Oppenheimer Fund*, 437 U.S. at 351. Defendants must produce all non-privileged responsive documents by February 13, 2013.

### c.     Sanctions

Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

The court has the discretion to issue sanctions. Defendants' refusal to provide discovery related to the claims file (extra-contractual claim) based on a prematurity argument were not "substantially justified." Fed. R. Civ. P. 37(c)(1). Defendants had not sought a protective order and the court had not bifurcated the discovery on the claims or stayed the extra-contractual claims. Under Rule 37(c)(1)(A), the defendants may be ordered to pay plaintiff's reasonable expenses, including attorneys' fees. Examining the overall circumstances, however, the court finds that sanctions are not appropriate at this time. The record demonstrates that there was a change in defense counsel (#23) and that plaintiff granted  defendants extensions of time to respond to the discovery requests (#30). The court notes that defendants could have been more diligent, but finds that prejudice did not result from the delay, as the court extended plaintiff's expert disclosure deadline herein.   The request for sanctions (#30 and #40) is denied.

. . .

. . .

. . .

B.  **Motion to Bifurcate**

1.  **Oral Arguments**

The defendants' motion to bifurcate (#33) was not set for hearing, as the motion was referred to the Honorable Miranda Du. On the day of the hearing, the motion (#33) was referred to the undersigned Magistrate Judge. The court reviewed the moving papers (#33, #43, and #44) and heard oral arguments from the parties (#45). Defense counsel argued that the bad faith claim is not ripe for adjudication, and that the cases relied upon by plaintiff are distinguishable, because plaintiff's claim has not been denied and there are unique elements to the breach of contract claim that are separate from those of a bad faith claim. (#45). Plaintiff's counsel argued that the bad faith claim is not brought forth due to a denial of the claim, rather it relates to defendants continuing to delay and dispute plaintiff's claim. *Id.*

2.  **Relevant Law/Discussion**

Federal Rule of Civil Procedure 42(b) grants courts the authority to "order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims." Courts may order separate trials to achieve "convenience, to avoid prejudice, or to expedite and economize" the proceedings. *Id.* The decision of whether to bifurcate claims is up to the court's discretion. *Hirst v. Gertzen,* 676 F.2d 1252, 1261 (9th Cir. 1982). Bifurcation is appropriate when it simplifies the issues for the jury and avoids the danger of unnecessary jury confusion. *Id.* Bifurcation is particularly appropriate when resolution of a claim or issue might dispose of the entire case. *See O'Malley v. United States Fidelity and Guaranty Co.*, 776 F.2d 494, 501 (5th Cir. 1985) (bifurcation was proper because resolution of contractual claim disposed of bad faith claims).

a.  **Bifurcation of Breach of Contract and Bad Faith Claims Not Required**

The Nevada Supreme Court has held that Nevada law does not *require* a plaintiff to establish success on a contractual claim prior to proceeding with a bad faith claim. *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249 (1998). The court in *Tracey v. Am. Fam. Mut. Ins. Co.*, 2010 WL 3613875 (D.

Nev. Sep. 8, 2010) provided some guidance in deciding whether a plaintiff's allegations of bad faith are premature until after the contractual claims are resolved. The court distinguished between bad faith claims that arose *after* the breach of contract claim was settled, as in *Pulley v. Preferred Risk Mut. Ins. Co.*, 111 Nev. 856 (1995), and claims that defendants were "acting in bad faith when [they] handled and denied" the claim, as in *Tracey*. *Tracey*, 2010 WL 3613875 *5.

Acts that constitute bad faith on the part of an insurer under NRS 686A.310 include, (1) failing to acknowledge and act reasonably promptly, (2) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims, (3) failing to affirm or deny coverage of claims within a reasonable time, (4) failing to effectuate prompt, fair and equitable settlements of claims, (5) compelling insureds to institute litigation, and (6) failing to settle claims promptly. It is clear, therefore, that bad faith claims are not restricted to those instances where the insured actually "denied" the claim. *See* NRS 686A.310; See also *Schumacher v. State Farm Fire & Cas. Co.,* 467 F. Supp. 2d 1090, 1095 (D. Nev. 2006)(holding that the Nevada insurance regulations, codified in NRS 686A.310, address the manner in which an insurer handles an insured's claim whether or not the claim is denied).

Plaintiff alleges in his amended complaint that defendants violated NRS 686A.310(1) (b), (c), (d), (f), (g), and (n) by failing to act reasonably promptly, implement reasonable standards for prompt investigation, affirm or deny coverage of plaintiff's claim within a reasonable time, effectuate prompt settlement, and promptly provide a reasonable explanation for the basis of the offer to settle plaintiff's claim, and forcing plaintiff to commence the instant action. (#15). As in *Tracey,* plaintiff's claim for bad faith relates to defendants' actions occurring during the *handling* of plaintiff's claim. *Id; Tracey,* 2010 WL 3613875 *5. Accordingly, the claims for breach of contract and bad faith may be brought concurrently and bifurcation of the claims is not mandatory. *Id.*

    b.  *Rule 42(b) Bifurcation Factors*

The court must examine under Rule 42(b) whether bifurcation is more convenient, avoids prejudice, or will expedite and economize the proceedings. Fed. R. Civ. P. 42(b). The court finds that bifurcation of the claims would require the parties to present much of the same evidence twice, have the same witnesses testify twice, make many of the same arguments twice, and pay the cost of litigation twice. The court would also be required to schedule time on its calendar to hear the duplicative arguments, presentation of evidence, and testimony. The convenience and efficiency factors weigh in favor of denying the motion for bifurcation. *Id.* The court finds that any concerns with prejudice or confusion can be properly addressed by way of jury instructions and counsel's opening and closing arguments. *Id;* See *Tracey,* 2010 WL 3613875 *7. Bifurcation is not warranted under the Rule 42(b) factors. *Id.* As with the bifurcation of trial, bifurcating discovery would be a waste of the court's and the parties' resources, time, and energy and is not warranted.

Accordingly and for good cause shown,

IT IS ORDERED that plaintiff Osbourne Renfrow's *Emergency* Motion to Compel (#30) is GRANTED in part and DENIED in part, as discussed above. Defendant must produce all responsive documents to Request Nos. 1, 2, 3, 4, and 8 by February 13, 2013, and file under SEAL responsive documents to Request Nos. 5 and 6 in conjunction with the filing of the Joint Pretrial Order.

IT IS FURTHER ORDERED that plaintiff's request for sanctions is DENIED.

IT IS FURTHER ORDERED that the deadline for plaintiff to disclose his bad faith expert is March 15, 2013. The parties must meet and confer to agree upon and file a stipulation regarding a rebuttal expert deadline.

IT IS FURTHER ORDERED that defendants' Motion to Bifurcate, or In the Alternative Stay Discovery of the Extra-Contractual Cause of Action (#33) is DENIED.

DATED this 31st day of January, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE